UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SERVICES,

       Plaintiff,

                                                                                                   Civil No. 07-14989
                                                                                  Hon. John Feikens

       v.

CYNTHIA EIDNES,

       Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

      Before this Court are Plaintiff Kelly Services Inc.'s (Kelly) motion for a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), and Defendant Cynthia Eidnes's (Eidnes) motions to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)1); for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2); for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6); as well as Eidnes's motion to dismiss or transfer for improper venue, pursuant to 28 U.S.C. §§ 1391, 1404.  For the reasons explained below, this Court GRANTS Plaintiff's motion for a preliminary injunction, and DENIES Defendant's motions to dismiss and transfer venue.

**I.**      **Background Information**

      **A.**      **Factual Information**

      Plaintiff Kelly Services is a Delaware corporation with its principal place of business in Troy, Michigan.  Defendant Cynthia Eidnes is a citizen and resident of Minnesota.  Eidnes is a Stanford Law School graduate who began in the legal staffing business in November 1993 when she joined the Wallace Law Registry.  Both parties agree she was very successful in this industry,

developing contacts throughout the Minneapolis legal market and establishing a market niche for temporarily placing attorneys for discrete projects.

Eidnes's employment with Kelly Services began the day Kelly Services bought the Wallace Law Registry in May 1995. Without any previous presence in the Minneapolis legal market, Kelly Services relied heavily on Eidnes to continue her success, which she did with the vast majority of her work confined to the greater Minneapolis area.[1] On May 1, 2000, Eidnes signed a document entitled "Agreement with Full-Time Employees of Kelly Corporation."[2] (Agreement). As relevant to this litigation, the Agreement contained the following non-competition, non-solicitation clauses which were included as consideration for her employment with Kelly Services.

(1) . . . I will never disclose, use, copy, or retain any confidential business information or trade secrets belonging to Kelly, Kelly's customers, or Kelly's suppliers. This includes customer and employee lists; sales, service, recruiting and training techniques and manuals; sales and marketing strategies; computer programs; financial date and other similar information.

(2) While I am working for Kelly, I will not solicit any of Kelly's customers or employees for a competing business, and I will not compete against Kelly or associate myself with any Kelly competitor as an employee, owner, partner, stockholder, investor, agent or consultant. These same limitations apply for one year after I leave Kelly in any market area in which I worked or had responsibility during the past five years of my employment with Kelly.

On October 31, 2007, Eidnes informed her immediate supervisor that it would be her last day with Kelly Services. She gave no indication why she was quitting or who she would be working for in the future. It was only after reviewing the website of Beacon Hills, a direct competitor of Kelly's, that it was discovered that Eidnes had left to become the Beacon Hills

---

[1] For the purposes of this lawsuit, Kelly Services asks that Eidnes be limited from competing with it in Hennepin, Ramsey, Dakota, Anoka, Scott, Carver, Washington, Stearns, and Blue Earth Counties.

[2] It is uncontested that Eidnes was obligated to a similar agreement that restricted her for a two year span when she was employed by Wallace Law Registry.

Legal Division Director.

Kelly alleges that as part of her employment and because of the nature of her position with Kelly, Eidnes had access to and regularly utilized Kelly's trade secrets and confidential information, including its customer lists, marketing and sales strategies, contractual details for its customers, regional pricing lists and profit margins. Kelly also alleges that Eidnes had at least semi-regular access to this information through Kelly's Troy based computer system. As a result of these development, Kelly claims Eidnes is in violation of the Agreement she signed and that she is in violation of the Michigan Uniform Trade Secrets Act (MUTSA), M.C.L. § 445.1901 et. seq. As a result, Kelly fears that Eidnes will use its trade secrets and confidential information unlawfully and that as a result, it will lose the value of this information as well as customers, clients and revenues.

### B.      Procedural Information

On December 6, 2007, following arguments on Plaintiff's motion for a Temporary Restraining Order, this Court issued an order restraining Defendant Eidnes from working for a Kelly Services competitor in the Minneapolis area legal staffing market until further notice of this Court. Plaintiff now seeks a preliminary injunction that retrains or enjoins Defendant Eidnes from violating its agreement with Eidnes until November 1, 2008.

Defendant has also filed her own motions. First, Eidnes claims this court does not have subject matter jurisdiction over these facts because the dispute does not amount to $75,000 of damages which is required in a diversity jurisdiction matter such as this. Second, Eidnes argues this court does not have personal jurisdiction over her because she lacked contact with Michigan, other than incidental contacts that bear no relationship to these events. Third, Eidnes argues that

Plaintiff failed to state a claim because of the general nature of its complaint.  Finally, Eidnes claims the venue chosen is improper because the events and conduct at issue occurred in Minnesota, not Michigan.  In the alternative, Eidnes asks that this court to transfer venue to Minnesota as a matter of convenience.

The Court will address Defendant's Motions first, and then address Plaintiff's Motion for a Preliminary Injunction.

## II.     Subject Matter Jurisdiction

Eidnes argues that this court does not have subject matter jurisdiction because the damages alleged are indefinite and not readily ascertained, pursuant to Federal Rules of Civil Procedure 12(b)(1).  Subject matter jurisdiction based on diversity citizenship requires $75,000 to be at stake, exclusive of attorney fees and court costs.  When the amount in controversy is challenged by the Defendant, the Complaint will be dismissed only "if it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdiction amount."  Massachusetts Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir. 1996)  Plaintiff is not required to show an absolute certainty that it will be entitled to a verdict in excess of $75,000.  Instead, there must be a legal certainty that Plaintiff will not recover that amount for this matter to be dismissed for lack of subject matter jurisdiction.  Olden v. LaFarge Corp., 203 F.R.D. 254, 259-60 (E.D. Mich. 2001) (Lawson, J.)

I cannot conclude that there is a legal certainty that Plaintiff will not be able to recover more than $75,000 in damages.  If Defendant were allowed to work in the Minneapolis market, based upon the affidavits submitted by both parties to this Court, it is very conceivable that it would only take several customers or contracts before Plaintiff sustained over $75,000 in lost

business. It is undisputed that Eidnes is very capable and successful. Losing her services in violation of the agreement that she made with Plaintiff would almost certainly cause damages in excess of $75,000. I therefore, DENY Defendant's motion to dismiss for lack of subject matter jurisdiction.

## III.     Personal Jurisdiction

Eidnes moves to dismiss this case for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). She argues that she is a resident of Minnesota and has come to Michigan once, for a training session entirely unrelated to her job with Kelly Services. Moreover, she claims that the events and facts of this case occurred in Minnesota, and not Michigan.

Plaintiff bears the burden of establishing personal jurisdiction. Bird v. Parsons, 289 FF.3d 865, 871 (6th Cir. 2002). When the evaluation of personal jurisdiction is made without an evidentiary hearing, the Plaintiff "need only make a prima facie showing of jurisdiction." Id. at 871. The Sixth Circuit has instructed this Court to consider the pleadings and affidavits in a light most favorable to the Plaintiff. Plaintiff's burden is "relatively slight." Kelly Services, Inc. v. Noretto, 495 F.Supp.2d 645, 651 (E.D. Mich. 2007) (Gadola, J.)[3]; McQuiston v. Hoffa, 313 F.Supp.2d 710, 715 (E.D. Mich. 2004)(Feikens, J.) .

To establish personal jurisdiction in this district, Plaintiff must show that (1) Michigan's long-arm statute supports this court's exercise of personal jurisdiction, and (2) that the Due

---

[3]The Noretto case bears striking similarities with the events of this matter. The contract at issue in both cases is identical, issued by Plaintiff Kelly Services to all of its employees. Defendant Eidnes is also very similar to Noretto. Although the defendants were in different sales areas, they were nonetheless high ranking salespeople for Kelly Services who used confidential information and trade secrets possessed by Kelly Services to accomplish their jobs. As such, Noretto served to assist this Court in evaluating the facts of this matter and the issues of law that were applied in each case.

Process Clause of the Fourteenth Amendment is not violated by that exercise.  Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002); Neimi v. NHK Spring Co. Ltd., 276 F.Supp.2d 717, 719-20 (E.D. Mich. 2003)(Feikens, J.)  The first requirement is uncontested, and, in any event, that standard of the Michigan Long Arm Statute is "extraordinarily easy to meet."  Noretto, 495 F.Supp.2d at 652.  The slightest act of business meets this standard, and that is conceded by both parties as both cite to a training meeting Eidnes attended at Kelly Services' Troy Headquarters.  Further, Defendant signed the contract to work for Michigan based Kelly Services which is at issue in this matter.

> The second step ascertains whether Defendant has the requisite minimum contacts with this state so that personal jurisdiction over the suit does not offend "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945).  The Sixth Circuit has instructed this Court to apply a three-part analysis in determining this analysis.  First, Plaintiff must show that Defendant purposefully availed herself of the privilege of conducting activities in Michigan (the forum state).  Second, the cause of action must come out of those activities.  Third, there must best be a connection between Defendant's activities and the forum state to make the exercise of jurisdiction fundamentally fair.  Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998.)

> In this instance, the evidence viewed in a light most favorable to Plaintiff shows that Eidnes accessed a Michigan-based computer server and database networks as part of her job responsibilities.  See ACS Consultant v. Williams, 2007 U.S. Dist. Lexis 15120 (Zatkoff, J.) (March 5, 2007) (use of Michigan based computer services is sufficient to establish personal jurisdiction in Michigan, even though Defendant's physical presence is in another state).

Further, as evidenced by the emails and phone logs produced by Plaintiff, it is clear that there is at least a prima facie showing that Eidnes had at least semi-regular contact with Michigan-based supervisors during the course of her employment with Kelly Services. See <u>Kelly Services v. Noretto</u>, 495 F.Supp.2d at 652-53. From these facts, it is clear to this Court that Eidnes purposefully availed herself of the privileges of conducting activities in Michigan. Maintaining this suit in this Court will not offend the tradition notions of fair play and substantial justice. Accordingly, Defendant's Motion to Dismiss for lack of personal jurisdiction is DENIED.

**IV.    Failure to State a Claim**

Eidnes also moves to Dismiss this matter for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). In reviewing this motion, this Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." <u>Ziegler v. HBP Hog Mkt.</u> 249 F.3d 509, 512 (6th Cir. 2001).

Eidnes claims that Plaintiff has made mere accusations and bald assertions regarding the confidential information and trade secrets that Plaintiff fears will be used by Eidnes in her employment for a competitor. This Court disagrees. Paragraph 14 of the Complaint spells out clearly enough without divulging its content, the exact nature of these trade secrets and confidential information. Specifically they include customer lists and leads; operational procedures and strategic planning; employee information; marketing and sales strategies and

practices; customer pricing, contractual details for customers, customer profits, customer needs, training methods and needs; recruiting and resourcing details and information; and the weaknesses and strengths of KLR's services. If it is proven that Defendant Eidnes had access to this information, the relief can be granted.

Eidnes also argues that Plaintiff merely parrots the MUTSA in alleging that it took reasonable steps to protect this information. Regardless of whether Plaintiff does so or not, Plaintiff has alleged that it takes reasonable steps to protect this information such as password protection, access on a need-to-know basis, and the use of non-compete, non-solicit employment contracts. Just as important, that it did so with Eidnes. Assuming this is true, as this Court should, Plaintiff can recover damages based on these facts.

Finally, Eidnes argues that Plaintiff has not specifically pled what information was taken by Eidnes. Again this Court disagrees. It is a very reasonable to conclude that if Eidnes had access to this information that she can recall at least some of it in her mind, without having access to it on paper copy or through computer archives. This is part of the justification for non-compete, non-solicit employment agreements: to reasonably protect the employer from the risk that an employee could move to a competitor and use private information against her former employer. For these reasons, the Court DENIES Defendant's Motion to Dismiss for failure to state a claim.

## V.     Improper Venue

Defendant next moves to dismiss this matter for improper venue, or in the alternative, to transfer venue to the District of Minnesota. See 28 U.S.C. §§ 1391, 1404; Fed. R. Civ. P. 12(b)(3). In this motion, Eidnes bears the burden of establishing that venue is improper. Kelly

Services v. Noretto, 495 F.Supp. 2d at 654.  To do so, she must demonstrate that a substantial part of the events giving rise to this claim did not occur in the Eastern District of Michigan and that (2) a substantial part of the property that is the subject of the action is not located in the district.  See 28 U.S.C. § 1391(a)(2).  In defining "substantial part," only a substantial connection to the events in Plaintiff's claim is needed for there to be venue.  A substantial connection is sufficient for venue even if a greater part of the events occurred in another venue.  See Amphion Inc. v. Buckeye Elec. Co., 285 F.Supp.2d 943, 946 (E.D. Mich. 2003) (Gadola, J.)

      As was stated previously in this Court's discussion of personal jurisdiction, there is a substantial connection between Michigan and the alleged events that took place and form the basis of this lawsuit.  It is true that Defendant Eidnes spent almost all of her time in Minnesota.  Nonetheless, she availed herself of employment with a Michigan headquartered company that apparently required her to interact with its Michigan based computers and Michigan based personnel.  See PML North America v. Hartford Underwriters Ins., 2006 U.S. Dist. LEXIS 8645 (E.D. Mich. 2006) (Cleland, J.)  Further, the information that Kelly Services seeks to protect is based in Michigan, in Kelly's computer databases which are located in Troy.  For these reasons, Defendant Eidnes has not met her burden and the Court DENIES her motion to dismiss this matter for improper venue.

      In the alternative, Defendant Eidnes asks this Court to transfer venue to the District of Minnesota, pursuant to 28 U.S.C. § 1404 because it would be more convenient for the witnesses who will be called to testify during these proceedings.  See Midwest Motor Supply v. Kimball, 761 F.Supp. 1361 (S.D. Ohio 1991) (convenience for the witnesses is a primary, if not the preeminent reason for transfer under section 1404).

To transfer an action, Defendant Eidnes must meet three criteria: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." McQuiston, 313 F.Supp.2d at 719. The convenience of witnesses has been called "the most powerful factor governing the decision of whether to transfer a case." 17 Moore's Federal Practice, § 111.13[1][f][i]. The determination of relative levels of inconvenience "rest[s] within the sound judicial discretion of the district judge." McQuiston, 313 F.Supp.2d at 719. Transferring venue cannot result in an exchange of inconvenience from one party to the other. Superior Consulting v. Walling, 851 F.Supp. 839, 845 (E.D. Mich. 1994)(Cohn, J.)

Without naming or numbering them, Defendant Eidnes argues that her material witnesses are the law firms and lawyers she contacted in the Minneapolis area as part of her job responsibilities. However, it is also true that there will be testimony required from witnesses located in Troy, Michigan and that much of the evidence relating to Kelly Services's confidential information is located here in Michigan. As such, a change of venue would only trade inconveniences. As such, I DENY Defendant's Motion to transfer venue.

## VI.     Preliminary Injunction

Plaintiff Kelly Services has moved this Court to implement a preliminary injunction to enforce the terms of its non-compete, non-solicit agreement with Defendant Eidnes. I have already issued an ORDER GRANTING Plaintiff's Motion for a preliminary injunction. The following are the reasons for doing so.

Courts must balance four elements when considering granting injunctive relief: (1) likelihood of success on the merits; (2) irreparable harm; (3) the balance of equities; and (4) the

public interest. Henkel Corp. v. Cox, 386 F.Supp.2d 898, 902 (E.D. Mich. 2005)(Feikens, J.) Courts will not normally grant injunctive relief, however, unless both the likelihood of success on the merits and irreparable harm prongs weigh in favor of such relief. See, e.g., 13 Moore's Federal Practice §65.06[1] and [2] (Matthew Bender 3d. ed.). If the injunction is granted, the moving party must indemnify the restrained party against damages that may be suffered by a wrongly restrained party. Fed. R. Civ. P. 65(c).

**I. Likelihood of Success on the Merits**

    **A.**    **Did Eidnes breach an enforceable agreement with Kelly Services? It is at least likely that she did.**

Eidnes argues that her employment contract with Plaintiff is unenforceable. Her premise is that this agreement is unenforceable because it keeps her from using business contacts that she personally developed, without Plaintiff's assistance. Eidnes claims that the agreement keeps her from working in a field, the legal staffing field in the Minneapolis area, that she herself developed. According to Eidnes, the information used to solicit sales in this field is not private information in Plaintiff's possession but rather public domain, accessible through sources such as the internet, the Yellow Pages, and Martindale Hubbell.

Under Michigan law, a non competition agreement is enforceable as along as: (1) it is reasonably drawn as to its duration, geographical scope, and line of business; and (2) it protects the legitimate business interests of the party seeking enforcement. Lowry Computer Products v. Head, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997)(Gadola, J.) Legitimate business interests must include much more than a prohibition on competition; reasonableness is based on several factors such as consideration supporting the contract, economic hardship on the employee, and

whether the employer has reasonable competitive interests that need protection. <u>Superior Consulting Comp. v. Walling</u>, 851 F.Supp. 839 (E.D. Mich. 1994)

Case law is clear that the time and geographical limitations are reasonable. The limitation is for one year and it includes a nine-county area in Minneapolis. <u>See</u> <u>Lowry</u>, 984 F. Supp. at 1116 (one year restrictions are reasonable); <u>Noretto</u>, 495 F.Supp.2d at 657 (non compete geographic limitations that are restricted to several counties are reasonable).

Further, it seems very likely that Plaintiff will win because it has legitimate business interests at stake. Although it is true that the names of the law firms that are recruited in the legal staffing field are easily accessible in the public domain, Plaintiff argues that its exposure to damage lies in the trade secrets and confidential information that Defendant Eidnes accessed. The danger to Plaintiff is not in Eidnes's knowledge of the legal staffing field in Minnesota, but rather her knowledge of the details of Kelly Services's pricing schemes, marketing strategies, and price markups (among other things) that she gained as a result of her work for Kelly Services and her access to its Troy based computer databases. Judge Gadola in <u>Noretto</u> found that Kelly Services had a legitimate business interest in protecting this information through a non-compete clause. Although Noretto and Eidnes sell to different markets, the principle that Kelly Services uses certain strategies and techniques in its sales remains a concern for it and I am convinced that this information is a legitimate, reasonable concern of Plaintiff's that should be protected.

Further, although Eidnes correctly states that she became employed with Kelly Services through a buyout of her company, as opposed to Noretto who was recruited to join, I fail to see how this negates a voluntarily entered into agreement. Both sides agree that Eidnes is a force in

the Minneapolis legal recruiting market. Were she so concerned at the time she signed the agreement, she had the ability to negotiate and eliminate the non-compete clause. After all, Eidnes is not a novice; she is a licensed attorney who once worked in a large law firm and is a graduate of the Stanford Law School. More than most people, she was fully aware of her options in regards to this clause and as important, what it meant both when she signed it and when she chose to ignore it and leave Plaintiff for a direct competitor.

      **B.**      **Did Eidnes violate the Michigan Uniform Trade Secret Act?  It is at least likely that she did.**

Plaintiff argues that Eidnes's use and disclosure of its confidential information is enjoinable under the Michigan Uniform Trad Secrets Act (MUTSA), MCL § 445.1901 et seq. This act provides that a court can enjoin the actual or threatened misappropriation of trade secrets
and can compel affirmative acts to protect trade secrets. Whether it is a protectable trade secret under the MUTSA depends on if the information has independent economic value because it is generally not known to others and the employer took reasonable steps to protect the confidentiality of the information. Determining whether information is a trade secret involves a two prong analysis. First, does the information derive independent economic value from not being generally known to others; and, second did the employer take reasonable steps to protect the confidentiality of the information. MCL § 445.1901 et seq.

Eidnes is correct to note that customer lists are not trade secrets, especially those lists that are devised by the employee, as in this instance. See Raymond James & Assoc. v. Leonard & Co., 411 F.Supp.2d 689, 697-98 (E.D. Mich. 2006)(Gadola, J.)  However, this matter is distinct

13

from the Raymond James case because it involves more than the protection of customer lists. Eidnes had access to Plaintiff's pricing schemes, the details of its customer contracts, its markups, employee information, i.e. confidential information that is used to differentiate Plaintiff's services to the Minneapolis legal market from its competitors.  Further, Plaintiff apparently took steps to protect this information by making a need-to-know criteria for access to it and by protecting through computer password access.  It is clear to me that there is a likelihood that Plaintiff could succeed on the merits of its case were this matter brought to trial.

**II. Immediate, Irreparable Injury**

Eidnes argues that Plaintiff will not suffer irreparable harm because the damages caused by the breach of the agreement can be compensated with money damages.  Defendant Eidnes also points out that the legal staffing market is competitive, constantly changing, and temporary. Its contracts with employers are not long-term contracts, but rather they go from project to project.  Eidnes cites to an Illinois state case as support for the notion that competitive activity by a former employee does not necessarily cause irreparable harm.

A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.  Overstreet v. Lexington-Fayette Urban County Government, 305 F.3d 566, 578 (6th Cir. 2002).  Last year, Judge Gadola in Kelly Services v. Noretto cited to the Sixth Circuit's teaching that the loss of customer goodwill can be considered irreparable injury because the damages that come from that loss are difficult to estimate.  In similar fashion, Judge Gadola also noted that the loss of fair competition that results from the breach of a non-competition clause is also likely to cause an employer irreparable harm.  Kelly Services v. Noretto, 495 F.Supp.2d at 659 (citing Basicomputer Corp. v. Scott, 973 F.2d 507,

512 (6th Cir. 1992).

I site to my colleague because the situation he faced in the Noretto case is almost identical to this matter. It is entirely unrealistic to expect Defendant Eidnes to work for a direct competitor in the Minneapolis legal services market and think that she will refrain from using her knowledge of Kelly's Services's trade secrets and confidential information against it in the marketplace. The use of this information is almost certain to result in the loss of customer goodwill because Defendant Eidnes will be able to undercut Kelly Services in the open market. The extent of that damage is indeterminable, but it is damage that will almost certainly happen and is irreparable according to the Sixth Circuit's teachings. I therefore find that Plaintiff has met the second prong of the analysis.

### III. Substantial Harm to Others

Whether there will be substantial harm to others is determined through a fact based inquiry. Kelly Services v. Noretto, 495 F.Supp.2d at 660. In situations where a non-competition clause is enforced through an injunction, there is harm to the enjoined employee. However, it is also clear to this Court that Defendant Eidnes brought this harm upon herself. She was fully aware of the provisions of her contract, probably more so than most people since she was formally an attorney. By breaking her agreement, Eidnes wilfully incurred the risk that Plaintiff might enforce the terms of the non-competition agreement.

Also, the damage done to Defendant Eidnes is mitigated by the fact that the agreement is limited in its time and geographic scope. Eidnes can work for a direct competitor in the legal staffing field as long as she does it outside of the one year prohibition and/or outside of the nine

county geographic area that the agreement will cover. Defendant Eidnes argues that the conditions are overly burdensome on her, in part because of her personal circumstances. This Court is not unsympathetic to her, but I cannot ignore the law in light of those circumstances, nor can I ignore the damage that Plaintiff would suffer if this Court chose not to enforce a reasonable agreement that the parties voluntarily entered into. As such, Plaintiff has met the third prong of the analysis.

## IV. Public Interest

The public interest here is clear. This Court is obligated by its duties to the public to enforce valid employment contracts and to adjudicate disputes.

Even though the enforcement of a preliminary injunction is extraordinary, there are times when such relief is necessary. Having reviewed the arguments and filings of both parties, I GRANT Plaintiff's Motion for Preliminary Injunction. Defendant Cynthia Eidnes is enjoined according to the terms of the Preliminary Injunction order previously issued by this Court. Further, pursuant to Fed. R. Civ. P. 65(c), Plaintiff must post a total bond of $50,000 as a reflection of the damages that may be incurred by a wrongfully enjoined party.

**IT IS SO ORDERED.**

Date:  January 10, 2008          s/John Feikens
                                 United States District Judge

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on January 10, 2008, by U.S. first class mail or electronic means.

s/Carol Cohron<br>Case Manager